## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| **JASON STELL,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:25-cv-00040** |
| | § | |
| **CARRINGTON MORTGAGE** | § | |
| **SERVICES, LLC.** | § | |
| | § | |
| *Defendants.* | § | |

## DEFENDANT CARRINGTON MORTGAGE SERVICES LLC'S
## MOTION FOR SUMMARY JUDGMENT

Defendant Carrington Mortgage Services LLC ("Carrington") moves for summary judgment as to the claims asserted by Plaintiff Jason Stell ("Plaintiff") and would respectfully show as follows:

## I.
## INTRODUCTION

Despite being in severe default, this lawsuit is Plaintiff's second attempt to avoid foreclosure. Plaintiff asserts claims of declaratory judgment, breach of contract, alleged violations of the Texas Property Code, promissory estoppel and intentional infliction of emotional distress, and he seeks injunctive relief restraining Carrington from foreclosing on the Property and the recovery of actual damages and attorneys' fees.

Plaintiff's allegations are baseless, and his claims fail as a matter of law and must be dismissed. First, Plaintiff's breach of contract claim fails because Carrington did not breach the Deed of Trust by failing to serve all proper foreclosure notices and because

1

Plaintiff's undisputable default is a prior material breach fatal to his claim. Second, the Texas Property Code does not provide for a private right of action and, even if it did, the undisputed evidence demonstrates that Carrington served all required foreclosure notices. Third, Plaintiff cannot maintain a promissory estoppel claim because a valid and enforceable contract exists between the parties, and because the promise he seeks to enforce through the promissory estoppel claim is barred by the statute of frauds. Fourth, any claim for intentional infliction of emotional distress fails because the alleged conduct by Carrington (even if true) does not rise to the level of outrageousness necessary to support Plaintiff's claim. Finally, because Plaintiff has not asserted a single viable cause of action, he is not entitled to declaratory or injunctive relief. Accordingly, because each of Plaintiff's claims fail as a matter of fact and law, the Court should enter judgment in favor of Carrington and dismiss Plaintiff's claims with prejudice.

## II.
## UNDISPUTED FACTS

**A.     The Mortgage agreement and Plaintiff's default.**

On October 29, 2014, to finance the purchase of the property located at 1867 Garnet Breeze Drive, Rosharon, Texas 77583 (the "Property"), Plaintiff executed a note for the principal balance of $183,571.00, (the "Note") and deed of trust (the "Deed of Trust," collectively the "Loan") in favor of Guild Mortgage Company, and which was recorded in the Official Public Records of Brazoria County, Texas as Document No. 2014047190.[1]

---

[1] Pet. at ¶ 7, Ex. 1.; **Exhibit A-1**, Note; **Exhibit A-2,** Deed of Trust.

4926-5541-1035.1

Carrington has serviced the Loan since October 1, 2025.[2]

The Deed of Trust provides that, prior to acceleration, a notice of default shall be sent to the borrower specifying "(a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property" and "further inform the Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale."[3] The Deed of Trust further provides:

> If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. . . . If Lender invokes the power of sale, Lender, its designee, or Trustee shall give notice of the date, time, place and terms of sale by posting and filing the notice as provided by Applicable Law. Lender or its designee shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law.[4]

On July 13, 2018, Plaintiff requested and was granted a Loan Modification.[5] The Loan Modification modified the principal balance, interest rate, monthly payments, and maturity date on the Loan, but otherwise provided that "the Note and Security Instrument

---

[2] **Exhibit A,** T. Morley Decl., at ¶ 2.
[3] *Id.* at ¶ 22.
[4] *Id.*
[5] **Exhibit A-3,** Loan Modification.

will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement."[6]

On July 30, 2018, Guild Mortgage Company assigned its interest in the Note and Deed of Trust to J.P. Morgan Mortgage Acquisition Corp.[7] Carrington remains the current servicer of the Loan.[8]

On January 1, 2019, Plaintiff defaulted on the Loan by failing to pay and perform his respective obligations.[9] Thus, on February 6, 2019, March 9, 2019, October 8, 2019, December 7, 2019, January 7, 2020, February 6, 2020, and March 8, 2020, via certified mail, Carrington sent Plaintiff Notices of Default and Intent to Foreclose (the "Notices of Default") informing Plaintiff he was in default of his loan obligations and that "failure to cure the delinquency 30 days from the date of the letter [would] result in acceleration of the sums secured by the Deed of Trust . . . and the sale of the property."[10] Each Notice of Default specifically informed Plaintiff of his default, the amount required to cure the default, and how payments could be made to cure the default.[11] The Notices of Default further specified:

> Failure to cure the delinquency 30 days from the date of [the letters] will result in acceleration of the sums secured by the Deed of Trust or Security Instrument and the sale of the property. You have the right to reinstate your loan after legal

---

[6] *Id*. at ¶ 6.

[7] **Exhibit A-4**; Assignment.

[8] Ex. A, T. Morley Decl., at ¶ 2.

[9] **Exhibit A-5**, 02.06.2019 Notice of Intent to Foreclose; **Exhibit A-6**, 03.09.2019 Notice of Intent to Foreclose; **Exhibit A-7**, 10.08.2019 Notice of Intent to Foreclose; **Exhibit A-8**, 12.07.2019 Notice of Intent to Foreclose; **Exhibit A-9**, 01.07.2020 Notice of Intent to Foreclose; **Exhibit A-10**, 02.06.2020 Notice of Intent to Foreclose. **Exhibit A-11**, 03.08.2020 Notice of Intent to Foreclose.

[10] Exs. A-5 through A-11 (Notices of Default).

[11] *Id*.

4926-5541-1035.1

action has begun. You also have the right to assert in foreclosure, the non-existence of a default or any other defense to acceleration and foreclosure.[12]

**B.      Plaintiff's first lawsuit to stop the foreclosure is dismissed with prejudice.**

Plaintiff failed to cure the default.[13] Thus, on December 8, 2022, Carrington accelerated the Loan and scheduled the Property for foreclosure.[14] To stop the foreclosure sale, on February 2, 2023, Plaintiff filed a lawsuit in in Brazoria County District Court asserting claims for breach of contract, promissory estoppel, alleged violations of the Texas Property Code Section 51.0075, and fraud in the inducement, and seeking injunctive and declaratory relief.[15] Among other things, Plaintiff alleged J.P. Mortgage Acquisition Corp. failed to properly handle Plaintiff's loss mitigation application in regard to a supposed COVID-19 forbearance request, and did not provide proper pre-foreclosure notices prior to scheduling the foreclosure sale.[16] Thereafter, Plaintiff and J.P. Mortgage Acquisition Corp. filed a Joint Stipulation of Dismissal according to which "all claims and causes of action asserted or [that] could have been asserted by Plaintiff against Defendant [were] dismissed *with prejudice*, pursuant to the Parties' agreement."[17]

---

[12] *Id*. at 1.

[13] **Exhibit A-15,** Payment History.

[14] **Exhibit B,** *Stell v. J.P. Mortgage Acquisition Corp.* Case No. 3:23-cv-00080, in the Southern District of Texas, Galveston Division; Original Pet (Dkt. No. 1-1, Ex. 3, Notice of Substitute Trustee's Sale).

[15] *Id*, at 3–14 (Dkt. No. 1-1 - Pl.'s Org. Pet.).

[16] *Id*.

[17] *Id*. at 60 (Dkt No. 18 - Joint Stipulation of Dismissal with Prejudice)

4926-5541-1035.1

**C.      Carrington extends Plaintiff a loss mitigation offer, which Plaintiff does not accept.**

In response to a Presidentially-Declared Major Disaster resulting from Hurricane Beryl, on July 16, 2024, Carrington mailed Plaintiff a letter notifying him that for a period ending on October 7, 2024, Carrington would provide certain protections on the Loan, including that Carrington would not notice, move for, or conduct a foreclosure sale during the declaration period ending on October 7, 2024.[18] Carrington further explained that, if Plaintiff was experiencing a financial hardship "loss mitigation options *may* be available" to Plaintiff, and that Carrington offered various loss mitigations options including a forbearance plan, repayment plan, or loan modification and/or payment deferment.[19] However, the letter in no way guaranteed Plaintiff would receive any sort of loss mitigation assistance.[20]

> If you are experiencing financial hardship related to the PDMD, please contact Carrington to discuss payment relief and loss mitigation options that may be available to you. This period may be extended based on guidance provided by FEMA, or State and Federal guidance.  If an extension is granted, you will receive additional communication from Carrington advising you of the extension.  Carrington offers various loss mitigation options including the following:
>
> - Forbearance Plan
> - Repayment Plan
> - Loan Modification and/or Payment Deferment

[21]

After reviewing a mortgage assistance application submitted by Plaintiff, on August 29, 2024, Carrington notified Plaintiff he was "*conditionally approved* for either a short sale or deed-in-lieu of foreclosure," and requested that Plaintiff contact Carrington's Short

---

[18] Org. Pet, at Ex. 3; **Exhibit A-12,** 07.16.2024 Disaster Declaration Notice.

[19] *Id*.

[20] *Id*.

[21] *Id*.

4926-5541-1035.1

Sale Department to accept the offer.[22] Plaintiff, however, did not contact Carrington to accept its home liquidation offer.[23]

**D.      Plaintiff files a second frivolous lawsuit to avoid foreclosure.**

Plaintiff's account remained in default, thus, on December 4, 2024, Carrington accelerated the Loan by sending Plaintiff, via certified mail, a Notice of Acceleration and Notice of Substitute Trustee's Sale to the Property address.[24] In that notice, Carrington advised that, should Plaintiff not submit full payment of all outstanding amounts owed under the Note, the liens created under the Deed of Trust would be foreclosed on February 4, 2025.[25]

Instead of paying the balance due on the Note as specified in the Notice, on January 28, 2025, Plaintiff filed the present lawsuit in Brazoria County District Court to stop the foreclosure sale. In his petition, Plaintiff asserts claims for breach of contract, promissory estoppel, alleged violations of the Texas Property Code Section 51.0075, intentional infliction of emotional distress, and seeks injunctive and declaratory relief.[26] With eerily similar pleadings as his previous lawsuit, Plaintiff alleges Carrington failed to properly handle Plaintiff's loss mitigation application in regard to a forbearance request submitted in response to the Hurricane Beryl disaster declaration, and that Carrington failed to

---

[22] **Exhibit A-13,** 08.29.2024 Home Liquidation Notification (emphasis added).
[23] Ex. A, [Rep.] Dcl. at ¶ 16.
[24] **Exhibit A-14,** 10.04.2024 Notice of Acceleration & Notice of Substitute Trustee's Sale; **Exhibit A-2,** Deed of Trust at ¶ 22.
[25] *Id*; Ex. 15 (Payment History) (showing last payment toward the loan on 05.01.2020).
[26] Pl.'s Org. Pet.

provide proper pre-foreclosure notices prior to scheduling the foreclosure sale.[27]

To this day, Plaintiff remains in default of his obligations and Plaintiff has not made a payment towards the Loan in over five (5) years.[28]

## III.
## SUMMARY JUDGMENT EVIDENCE

In support of this Motion for Summary Judgment, Carrington relies upon the following evidence, which is incorporated herein by reference:

| | | |
|---|---|---|
| **Exhibit A** | – | Declaration of Terrence Morley |
| **Exhibit A-1** | – | Note |
| **Exhibit A-2** | – | Deed of Trust |
| **Exhibit A-3** | – | Loan Modification |
| **Exhibit A-4** | – | Assignment |
| **Exhibit A-5** | – | 02.06.2019 Notice of Intent to Foreclose |
| **Exhibit A-6** | – | 03.09.2019 Notice of Intent to Foreclose |
| **Exhibit A-7** | – | 10.08.2019 Notice of Intent to Foreclose |
| **Exhibit A-8** | – | 12.07.2019 Notice of Intent to Foreclose |
| **Exhibit A-9** | – | 01.07.2020 Notice of Intent to Foreclose |
| **Exhibit A-10** | – | 02.06.2020 Notice of Intent to Foreclose |
| **Exhibit A-11** | – | 03.08.2020 Notice of Intent to Foreclose |
| **Exhibit A-12** | – | 07.16.2024 Disaster Declaration Notice |
| **Exhibit A-13** | – | 08.29.2024 Home Liquidation Notification |
| **Exhibit A-14** | – | 12.04.2024 Notice of Acceleration & Notice of Substitute Trustee's Sale |
| **Exhibit A-15** | – | Payment History |
| **Exhibit B** | – | *Stell v. J.P. Mortgage Acquisition Corp.* Case No. 3:23-cv-00080 |

---

[27] *Id*. at ¶¶ 10–13.
[28] Ex. A-15 (Payment History).

4926-5541-1035.1

# IV.
## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 permits any party to a civil action to move for summary judgment upon a claim as to which there is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law. A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25 (1986). The movant need only show the absence of evidence to support a claim on issues to which the non-movant bears the ultimate burden of proof at trial. *Id.* at 323–25; *Austin v. Kroger Tex., LP*, 864 F.3d 326, 335 (5th Cir. 2017). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Celotex*, 477 U.S. at 324–35. The non-moving party must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986).

# V.
## ARGUMENTS & AUTHORITIES

### A.  Plaintiff's breach of contract claim fails as a matter of law.

Plaintiff asserts a breach of contract claim alleging Carrington failed to send the required pre-foreclosure notices and that Carrington also failed to provide "Plaintiff the opportunity to cure the default."[29] Plaintiff's allegations are plainly untrue.

---

[29] Org. Pet. at ¶ 19.

4926-5541-1035.1

*1.  Carrington provided all foreclosure notices as required by the Deed of Trust.*

Plaintiff contends Carrington breached the Deed of Trust by "failing to send all required foreclosure notices to Plaintiff at the property address, as well as . . . by refusing to give Plaintiff the opportunity to cure the default."[30] The Deed of Trust provides for service of a Notice of Default informing the borrower of "(a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property," and further informing Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.[31] In Texas, service by certified mail of notice that the debtor is in default is complete when the notice is deposited in the United States mail and addressed to the debtor's last known address.[32]

Carrington served the required Notices of Default on at least seven (7) separate occasions, each through certified mail, the latest of these on March 8, 2020.[33] Each of these notices informed Plaintiff of his severe default, the amount of the default, and that "failure to cure the delinquency 30 days from the date of [the letters would] result in acceleration of the sums secured by the Deed of Trust or Security Instrument and the sale of the

---

[30] *Id.*
[31] *Id.* at ¶ 22.
[32] *Id*. at § 51.002(5).
[33] Exs. A-5 through A-11 (Notices of Default).

10

property."[34] Despite having more than the requisite time to cure the default, Plaintiff failed to do so.[35] In fact, Plaintiff has not made a payment towards the Loan for at least five years.[36]

Because Plaintiff failed to cure the default in the "date specified in the [Notices of Default]" the terms of the Deed of Trust authorize Carrington "to require immediate payment in full of all sums secured by [the Deed of Trust] without further demand and invoke the power of sale." [37]

Carrington afforded Plaintiff more than the requisite thirty (30) days to cure the default when on December 4, 2024, it served —through certified mail— the Notice of Acceleration and Notice of Substitute Trustee's sale. The notice informed Plaintiff he was in default of his loan obligations and due to his failure to cure, Carrington had accelerated the amounts owed on the Loan.[38] Moreover, the notice informed Plaintiff of the "date, time, place, and terms of sale" as required by the Texas Property Code.[39] Because Carrington served Plaintiff the legally required notices, and gave Plaintiff more than the requisite thirty (30) days' time to cure the default before accelerating the Note, his breach of contract claim based on improper notices and alleged failure to provide Plaintiff opportunity to cure fail as a matter of law and therefore, must be dismissed with prejudice.

---

[34] *Id.*
[35] Ex. A-15 (Payment History).
[36] *Id.*
[37] Ex. A-2, at ¶ 22 (Deed of Trust).
[38] Ex. A-14 (12.04.2024 Notice of Acceleration & Notice of Substitute Trustee's Sale).
[39] Ex. A-2, at ¶ 22 (Deed of Trust); Ex. A-14 (12.04.2024 Notice of Acceleration & Notice of Substitute Trustee's Sale).

4926-5541-1035.1

## 2. *Plaintiff's prior material breach is fatal to his breach of contract claim.*

As the Texas Supreme Court made clear in *Dobbins v. Redden*, a party to a contract who is himself in default cannot maintain a suit for its breach. 785 S.W.2d 377, 378 (Tex. 1990); *see also Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 196 (Tex. 2004) (reciting the fundamental principle of contract law that, once a party materially breaches a contract, the other party is discharged from further performance). This rule was adopted and applied in the mortgage context by the Fifth Circuit Court of Appeals in *Villarreal v. Wells Fargo Bank, NA*., 814 F.3d 763, 767 (5th Cir. 2016). In that case, the Fifth Circuit held that, because the borrower pleaded no facts demonstrating she performed under her promissory note and deed of trust (an essential element of her breach of contract claim), the district court properly granted the lender's motion to dismiss based on the prior material breach doctrine. *Id.* Default on a promissory note is unquestionably a material breach under a loan agreement. *Sandoval v. Wilmington Sav. Fund Soc'y FSB*, No. 7:18-CV-91, 2018 WL 7253972, at *3 (S.D. Tex. Dec. 10, 2018) (dismissing breach of contract claim when borrower admittedly defaulted); *Keaton v. Cmty. Loan Servicing, LLC*, No. 3:22-CV-00172, 2024 WL 691368, at *3 (S.D. Tex. Feb.20, 2024) (borrower's default "dooms her breach of contract claim").

Plaintiff defaulted on the terms of the Note and Deed of Trust by failing to make scheduled mortgage payments.[40] This failure constitutes a material default of the Note and Deed of Trust and thus, pursuant to established Texas Supreme Court and Fifth Circuit case

---

[40] Exs. A-5 through A-11 (Notices of Default); Ex. A-15 (Payment History).

law, Plaintiff cannot maintain a claim for breach of contract against Carrington. *Dobbins*, 785 S.W.2d at 378; *Villarreal*, 814 F.3d at 767.

**B.**     **Plaintiff's claims under the Texas Property Code fail as a matter of law because Section 51.002 does not provide an independent cause of action.**

Plaintiff's claims for alleged violations of Section 51.002 of the Texas Property code fail as a matter of law because there is no independent cause of action for the code's pre-foreclosure notice requirements. *See Rucker v. Bank of Am., N.A.,* 806 F.3d 830 n.2 (5th Cir. 2015). Section 51.002 of the Texas Property Code requires lenders to provide a notice of default and intent to accelerate, specify the action required to cure the default, and give the debtor an opportunity to cure the default. TEX. PROP. CODE § 51.002 (West 2017). However, Courts are clear that Section 51.002 does not provide a plaintiff with a private right of action. *Carey v. Fargo*, No. H-15-1666, 2016 WL 4246997, at *3 (S.D. Tex. Aug. 11, 2016) (collecting cases). *Ayers v. Aurora Loan Servs., LLC.*, 787 F.Supp.2d 451, 454 (E.D. Tex. 2011) ("Plaintiff's property code allegations do not state a claim upon which relief can be granted . . . [A]bsent a sale, Plaintiff cannot state a claim under these sections of the Property Code."). Dismissal of Plaintiff' Section 51 claim is appropriate on this basis alone.

Further, Carrington complied with the notice requirements of Section 51.002, which requires the lender or mortgage servicer to serve a written notice of the Substitute Trustee's Sale on the borrower, at least 21 days before the sale. Tex. Prop. Code § 51.002(d)(3) (West 2017). Section 51.002(d) further requires a lender or mortgage servicer to send a debtor notice that he is in default under the deed of trust and give him at least 20 days to cure the

4926-5541-1035.1

default. Tex. Prop. Code § 51.002(d)(3) (West 2017). Service of the notices by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address. *Id.* at (e). Importantly, receipt by the debtor is not required in order for notice to be proper. *Thornton v. Chase Manhattan Mortg. Corp.*, No. 12-01-00182-CV, 2002 WL 253914, at *2 (Tex. App.—Tyler Feb. 20, 2002, no pet.); *Onwuteaka v. Cohen*, 846 S.W.2d 889, 892 (Tex. App.—Houston [1st Dist.] 1993, writ denied) ("The general purpose of the statute is to provide a minimum level of protection for the debtor, and it provides for only constructive notice of the foreclosure.").

Carrington sent borrower numerous notices regarding the default of his loan, on February 6, 2019, March 9, 2019, October 8, 2019, December 7, 2019, January 1, 2020, February 6, 2020, and March 8, 2020, via certified mail.[41] These notices included the date of delinquency, the amount owed, and warned the Note would be accelerated if Plaintiff failed to cure his default.[42] Then, on December 4, 2024, Carrington mailed to the Property address a Notice of Acceleration and Notice of Substitute Trustee's Sale clearly complying with Section 51002(b)(3).[43] Because Plaintiff can offer no rebuttal to this evidence, Carrington has proven proper notice of default as a matter of law, and the Court is well within its rights to grant summary judgment on this issue. *Rodarte v. Investeco Grp., LLC*, 299 S.W.3d 400, 409 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

---

[41] Exs. A-5 through A-11 (Default Notices).

[42] *Id*.

[43] Ex. A-14 (12.04.2024 Notice of Acceleration & Notice of Substitute Trustee's Sale).

**C.  Plaintiff's promissory estoppel claim fails as a matter of law.**

Plaintiff asserts a promissory estoppel claim in connection with allegations that Carrington promised to "grant him a loan forbearance through October 7, 2024, followed by a loan modification."[44] This claim, however, is quite simply contrary to law and fact and must be dismissed for the following reasons:

*1.  Carrington never promised a forbearance through October 7, 2024.*

Carrington's July 16, 2024 notice, which Plaintiff submits in support of his promissory estoppel claim,[45] informed Plaintiff that, for a period ending on October 7, 2024, Carrington would provide certain protections on the Loan, including "not [making] the first notice [ ] required by applicable law for any judicial or non-judicial foreclosure and Carrington will not move for foreclosure judgment or order of sale or conduct a foreclosure sale during the declaration period."[46] The notice further informed Plaintiff that loss mitigation options *may* be available to him if he was experiencing a financial hardship.[47] At no point did Carrington promise or guarantee Plaintiff a forbearance or a loan modification.[48] To the contrary, on August 29, 2024, Carrington informed Plaintiff he was ineligible for a Forbearance Plan or a loan modification, but instead extended the only option available to Plaintiff, a home liquidation offer which Plaintiff did not to accept.[49]

---

[44] Pet. at ¶¶ 43–45.
[45] Org. Pet, at Ex. 3.
[46] Ex. A-12, (07.16.2024 Disaster Declaration Notice).
[47] *Id*.
[48] *Id*.
[49] Ex. 15 (Payment History).

4926-5541-1035.1

| Workout Option | Decision | Reason / Explanation | Appeal Eligible? |
|---|---|---|---|
| Forbearance Plan | Ineligible | Not Due to Unemployment: We are unable to extend you this offer because your financial hardship is not directly related to a loss of income due to unemployment. | Y |
| Repayment Plan | Ineligible | Program Delinquency Guidelines Not Met: We are unable to extend you this offer because as of the date of our review your account has more than 12- months of payments due and unpaid. | Y |
| Traditional Modification | Ineligible | Cannot Achieve Investor/Insurer Target Payment: We are unable to extend you this offer because we are unable to create an affordable payment without changing the terms of your loan beyond the requirements of the program. | Y |
| Special Servicing | Ineligible | Cannot Achieve Investor/Insurer Target Payment: We are unable to extend you this offer because we are unable to create an affordable payment without changing the terms of your loan beyond the requirements of the program. | Y |
| Max Modification | Ineligible | Cannot Achieve Investor/Insurer Target Payment: We are unable to extend you this offer because we are unable to create an affordable payment without changing the terms of your loan beyond the requirements of the program. | Y |
| Standalone Mortgage Recovery Advance | Ineligible | Cannot Achieve Investor/Insurer Target Payment: We are unable to extend you this offer because we are unable to create an affordable payment without changing the terms of your loan beyond the requirements of the program. | Y |
| Home Liquidation | **Eligible** | You are conditionally approved. Please continue to read this notice in its entirety for important information on your next steps. | N |

[50]

### 2. *Plaintiff's promissory estoppel claim fails because a valid contract exists.*

Plaintiff's promissory estoppel claim is further barred as a matter of law because the doctrine of promissory estoppel "presumes no contract exists." *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 226 (Tex. 2002). Thus, if a valid contract exists covering the alleged promise, Plaintiff cannot recover under a promissory estoppel theory. *Id*; *see also Fertic v. Spencer*, 247 S.W.3d 242, 250 (Tex. App.—El Paso 2007, pet. denied) (the existence of an express contract between the parties "bars recovery . . . under the theory of promissory estoppel as a matter of law."); *Doctors Hosp. 1997, L.P. v. Sambuca Houston, L.P.*, 154 S.W.3d 634, 636 (Tex. App.—Houston [14th Dist.] 2004, pet. abated)

---

[50] *Id.*, at 5.

4926-5541-1035.1

("promissory estoppel becomes available to a claimant only in the absence of a valid and enforceable contract."). Plaintiff does not allege (nor could he) that the Note, Deed of Trust, and Loan Modification which Plaintiff executed are somehow invalid. Plaintiff admits as much by bringing a breach of contract action in this suit to enforce the Deed of Trust. Thus, as a matter of law, Plaintiff cannot maintain a promissory estoppel claim here, and judgment on this claim should be granted in Carrington's favor.

### 3. *Plaintiff's promissory estoppel claim is barred by the statute of frauds.*

Plaintiff seeks to enforce a supposed promise to grant Plaintiff a loan forbearance "followed by a loan modification" through his promissory estoppel claim.[51] A loan agreement for more than $50,000.00 is not enforceable unless it is in writing and signed by the party to be bound or by that party's authorized representative. *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256 (5th Cir. 2013) (citing TEX. BUS. & COM. CODE § 26.02(b)). A claim of promissory estoppel generally cannot be used to circumvent Texas' statute of frauds which requires certain "promises" to be in writing. TEX. BUS. & COM. CODE § 26.02(b).[52] The law recognizes a narrow exception where a promissory estoppel claim may overcome the requirements of the statute of frauds where there is a promise to sign a written contract previously prepared that would satisfy the requirements of the statute of frauds. *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256–

---

[51] Org. Pet. at ¶ 24.
[52] *See Baunchand v. Wells Fargo Home Mortgage, Inc.*, 2011 WL 6250785 at *8 (S.D. Tex. 2011) (recognizing a narrow exception inapplicable here "only when the promise at issue is 'a promise to sign an already existing written agreement that would satisfy the statute of frauds,' that promissory estoppel can survive the application of Texas' Statute of Frauds.").

4926-5541-1035.1

57 (5th Cir. 2013); *See Baunchand v. Wells Fargo Home Mortgage, Inc.*, 2011 WL 6250785 at \*8 (S.D. Tex. 2011).

Any promise by Carrington to extend a loan modification must be in writing and signed by an authorized representative of Carrington to be enforceable; or at the very least there must have been a written contract prepared in advance which would have satisfied the statute of frauds. *Martins, L.P.*, 722 F.3d at 256–57. Neither is present here. Clearly by its very terms, the July 16, 2024 Disaster Declaration letter did not promise Plaintiff a loan forbearance or loan modification.[53] Further, neither Plaintiff nor Carrington thereafter executed a modification agreement in writing (nor does Plaintiff allege they did).[54] Moreover, Plaintiff does not allege the parties had prepared a Loan Modification agreement which Carrington had promised to execute at a later date. Therefore, Plaintiff's promissory estoppel claim does not fall within the narrow exception to the statute of frauds. *Terna v. Wells Fargo Bank, N.A.*, No. 4:16-CV-03461, 2017 WL 6513990, at \*5 (S.D. Tex. Nov. 20, 2017)*, report and recommendation adopted*, No. 4:16-CV-3461, 2017 WL 6515686 (S.D. Tex. Dec. 18, 2017) (dismissing Plaintiff's promissory estoppel claim because "the promise at issue is not alleged to have been a promise to sign an existing written agreement that would satisfy the statute of frauds.") (internal quotations omitted). Accordingly, Plaintiff's promissory estoppel claim must be dismissed.

---

[53] Ex. A-12 (07.16.2024 Disaster Declaration Notice).

[54] *Id.* at Aff.' J. Stell ("Carrington notified me by a correspondence dated July 17, 2024, that they would assist me with my mortgage loan by, among other things, granting me a mortgage loan forbearance through October 7, 2024, followed by a loan modification.").

4926-5541-1035.1

### 4. *Plaintiff's promissory estoppel claim fails for failure to establish the necessary justifiable reliance.*

Finally, Plaintiff failed to establish the justifiable reliance necessary to succeed under a promissory estoppel theory. Texas courts have emphasized that "promissory estoppel requires a reasonable or justified reliance on the conduct or statement of the person or entity sought to be estopped by the person or entity seeking the benefits of the doctrine." *Phoneternet, LLC v. LexisNexis Risk Sols., Inc.*, No. 3:18-CV-1719-L, 2019 WL 4748271, at *14 (N.D. Tex. Sept. 30, 2019), *aff'd sub nom. Phoneternet, L.L.C. v. LexisNexis Risk Sols., Inc.*, 816 F. App'x 909 (5th Cir. 2020). "To show detrimental reliance, the plaintiff must demonstrate that he materially changed his position in reliance on the promise." *Owens v. Specialized Loan Servicing, L.L.C.*, 694 F. App'x 950, 955 (5th Cir. 2017). Plaintiff does not allege any facts showing he "materially changed his position." In fact, he was in default of his obligation years before the July 16, 2024, notice, and his position remained constant as he failed to cure his obligations.[55] And any supposed reliance on the expectation to receive a loan forbearance or loan modification would nonetheless be unjustified because the notice *did not* assure Plaintiff he would receive any loss mitigation benefit.[56] Finally, Plaintiff will be unable to show justifiable reliance because Plaintiff's his utter failure to cure his longstanding default is the sole reason why the loan was accelerated and noticed for foreclosure.

---

[55] Ex. A-15 (Payment History).
[56] Ex. A-12 (07.16.2024 Disaster Declaration Notice).

4926-5541-1035.1

**D.      Plaintiff's intentional infliction of emotional distress claim fails.**

To succeed on his claim for intentional infliction of emotional distress ("IIED"), Plaintiff must show that: (1) Carrington acted intentionally or recklessly; (2) the conduct was extreme and outrageous; and (3) the defendant's actions caused the plaintiff severe emotional distress. *Wieler v. Un. Sav. Ass'n of Tex., FSB*, 887 S.W.2d 155, 159 (Tex. App.—Texarkana 1994, writ denied). Liability for IIED may only be imposed where the conduct is so outrageous in character and so extreme in degree that it goes beyond all possible bounds of decency and can be regarded as atrocious and utterly intolerable in a civilized society. *Id.* (citing *Twyman v. Twyman*, 855 S.W.2d 619, 622 (Tex. 1993)). Whether a defendant's actions are extreme and outrageous is a question of law. *Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex. 2001).

"The actions of a financial institution attempting to enforce its contractual right to foreclose on a deed of trust under which the homeowner has defaulted, without more, do not meet the high bar of 'outrageous' behavior." *Auriti v. Wells Fargo Bank, NA*, No. 3:12-CV-334, 2013 WL 2417832, at *8 (S.D. Tex. June 3, 2013) (collecting cases). Courts have specifically ruled that a loan servicer leading a borrower to believe a repayment arrangement or modification had been reached when it actually had not been reached, does not rise to the level of outrageous or beyond all bounds of decency. *Montalvo v. Specialized Loan Servicing, LLC*, No. SA-21-CV-00964-JKP, 2022 WL 3031078, at *4 (W.D. Tex. July 30, 2022).

4926-5541-1035.1

Plaintiff alleges he "endured stress, anxiety, and loss of sleep" as a result of what he generally describes as "defendant's misconduct."[57] His Petition contains run-of-the-mill notice and loan servicing claims against Carrington but does not otherwise allege any facts which come even close to establishing "outrageous" behavior "beyond all bounds of decency" necessary to establish an IIED claim. Even if Plaintiff's accusations against Carrington were true—which are denied—Carrington's alleged actions do not nearly rise to the level of "extreme and outrageous" behavior that would justify a claim for IIED. Simply put, Carrington was merely attempting to enforce its contractual right to foreclose on a deed of trust under which Plaintiff defaulted. As such, Plaintiff's claim for IIED fails as a matter of law.

**E.     Because Plaintiff failed to assert any viable substantive cause of action to support his declaratory or injunctive relief claims, these too fail as a matter of law.**

Plaintiff's claims for declaratory and injunctive relief fail as a matter of law because they are not predicated upon a substantive claim. "[T]he viability of a party's request for declaratory relief is dependent on that party's ability to assert a viable substantive cause of action." *Collin Cty. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 171 (5th Cir. 1990) ("[I]t is the underlying cause of action ... that is actually litigated in a declaratory judgment action."); *see also Vestal v. Fed. Nat'l Mortg. Ass'n*, No. CV H-16-3628, 2017 WL 4217165, at *4 (S.D. Tex. Sept. 20, 2017). "Both Texas and federal law require the existence of a justiciable case or controversy in order to grant declaratory

---

[57] Org. Pet. at ¶ 34.

4926-5541-1035.1

relief." *Robinson v. PennyMac Loan Servs., LLC*, No. 422CV00016SDJCAN, 2022 WL 17824484, at *10 (E.D. Tex. Nov. 16, 2022). "[W]hen a party's underlying cause of action fails as a matter of law, its claim for declaratory relief necessarily fails as well." *Mid-Am. Supply Corp. v. Truist Bank,* 660 F. Supp. 3d 594, 602 (E.D. Tex. 2023) (citing *Stallings v. CitiMortgage, Inc.*, 611 F. App'x 215, 217–18 (5th Cir. 2015). In such situations, courts are to construe requests for declaratory judgment "as a theory of recovery predicated upon the cause of action" plead. *Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources, Ltd.*, 99 F.3d 746, 752 n.3 (5th Cir. 1996). Because each claim asserted by Plaintiff fails as a matter of law, the declaratory judgment and injunctive relief claims must also be dismissed. *See Daigle*, 2023 WL 8373179, at *4 (citing *Ferrell v. Union Home Mortg. Corp.*, No. 3:19-cv-00352, 2021 WL 1306685, at *4 (S.D. Tex. Apr. 7, 2021)) ("Because I have already recommended dismissal of the underlying breach of contract and [promissory estoppel] claims, the declaratory [judgment] claim must also be dismissed").

## CONCLUSION

For these reasons, Defendant Carrington Mortgage Services LLC respectfully requests the Court GRANT this Motion for Summary Judgment, DISMISS WITH PREJUDICE the claims asserted by Plaintiff Jason Stell, and for such other and further relief to which it may be justly entitled.

4926-5541-1035.1

Respectfully submitted,

**Bradley**

By: _/s/ Jessie R. Manzewitsch_

**MELISSA GUTIERREZ ALONSO**
Texas Bar No. 24087648
Fed. I.D. No. 2255351
mgutierrez@bradley.com
**JESSIE R. MANZEWITSCH PULERO**
Texas Bar. No. 24125659
Federal Bar No. 3737794
jmanzewitsch@bradley.com
600 Travis Street, Suite 5600
Houston, Texas 77002
(713) 576-0300 Telephone
(713) 576-0301 Telecopier
***ATTORNEYS FOR CARRINGTON MORTGAGE
SERVICES LLC***

4926-5541-1035.1

## CERTIFICATE OF SERVICE

I certify that on this 26th day of September 2025, a true and correct copy of the foregoing has been served on all counsel of record as follows:

***Via E-mail:*** *clay@viltlaw.com*
Robert C. Vilt
Vilt Law, PC
5177 Richmond Ave., Ste. 1142
Houston, Texas 77056
***Attorney for Plaintiff***

*/s/ Jessie R. Manzewitsch Pulero*
**Jessie R. Manzewitsch Pulero**

4926-5541-1035.1